UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SOUTHERN ENVIRONMENTAL LAW CENTER, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 3:24-CV-00110-JRG-DCP |
| TENNESSEE VALLEY AUTHORITY, | ) ) ) |
| Defendant, | ) ) |
| TENNESSEE GAS PIPELINE COMPANY, LLC | ) ) |
| Intervenor-Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

In this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), Plaintiff Southern Environmental Law Center ("SELC") seeks to compel the release of records that it requested from Defendant Tennessee Valley Authority ("TVA"). Now before the Court are cross motions for summary judgment filed by SELC, TVA, and Intervenor-Defendant Tennessee Gas Pipeline Company, LLC ("Tennessee Gas"). [P.'s Mot., Doc. 40; TVA's Mot. Doc. 42; Tennessee Gas's Mot., Doc. 45]. As discussed below, the parties' motions will be **GRANTED in part** and **DENIED in part**.

I. BACKGROUND

On July 7, 2023, Plaintiff submitted a FOIA request to TVA, seeking records related to a proposed gas pipeline. Specifically, SELC requested,

> [r]ecords of communications, including all attachments thereto, with Tennessee Gas Pipeline, Kinder Morgan, Texas Eastern Transmission, East Tennessee Natural Gas, or Enbridge regarding possible or planned energy or gas infrastructure projects, including pipelines, compressor stations, gas plants, and battery storage

systems to be constructed partially or entirely in Cheatham County, Tennessee after July 2023.

[FOIA Request, Doc. 1-1 at 1]. SELC asked that the temporal scope of the search include "records created or received beginning August 2020 through the date of the search for responsive records." [*Id.*]. After a conversation with TVA's FOIA Officer, Julia Denise Smith, SELC agreed to narrow the request to include only records of communications with Kinder Morgan. [*See* Interim Resp. Letter, Doc. 1-3].

On August 4, 2023, Ms. Smith sent Plaintiff an interim response letter, explaining that SELC's FOIA request had been placed in "Track 3" of its multi-track system, which is reserved for requests that are expected to take the longest time to process. [*Id.*]. TVA had not yet processed SELC's request when, on March 7, 2024, SELC filed the instant lawsuit. [Compl., Doc. 1 ¶ 36]. In the Complaint, SELC alleged that TVA violated the FOIA by failing to make a determination, conduct a reasonable search, and provide SELC with all non-exempt records responsive to its FOIA request. [*Id.* ¶ 50].

On April 12, 2024, TVA issued a determination letter with a link to 21 responsive documents, some of which had been redacted pursuant to FOIA Exemptions 4 and 6. [FOIA Resp., Doc. 15-1 at 1]. According to the letter, seven documents were withheld in full, also pursuant to Exemptions 4 and 6. [*Id.* at 2].

On April 15, 2024, TVA filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the lawsuit was moot because TVA had "fully responded" to SELC's request. [TVA's Mot. to Dismiss, Doc. 16]. SELC opposed the motion, asserting that outstanding issues remained about the adequacy of the search and TVA's assertions of exemptions. [P.'s Resp. Mot. Dismiss, Doc. 21 at 5–8]. The Court agreed and denied the motion. [Order, Doc. 28 at 5, 6].

After the Court denied TVA's motion to dismiss, Tennessee Gas, whose parent company is Kinder Morgan, filed a motion to intervene under Rule 24 of the Federal Rules of Civil Procedure. [Doc. 34]. The Court granted the motion, finding that Tennessee Gas has a substantial legal interest in protecting confidential business information that may be contained in records responsive to the FOIA request. [Doc. 37].

On March 19, 2025, TVA sent SELC a supplemental FOIA response. [Supp. FOIA Resp., Doc. 41-1]. In the supplemental response letter, Ms. Smith advised that since its April 2024 response, TVA had "conducted an additional search to supplement that initial search." [*Id.* at 1]. Smith explained that "the Cheatham County project was initially referred to as Ashland City, and some of the emails with that reference were inadvertently overlooked." [*Id.*]. However, in the additional search, "[t]hat oversight was corrected, and two additional custodians were added, resulting in additional records." [*Id.*]. The supplemental response included a link to 73 responsive records, which "comprise[d] all responsive records resulting from both the initial and supplemental searches." [*Id.*]. A total of 11 documents were released in full; 62 records were released with redactions; and 37 documents were withheld in full. [*Id.*]. Ms. Smith asserted that the redactions and withheld documents were justified under FOIA Exemptions 4 and 6. [*Id.* at 2–3].

The parties subsequently filed cross motions for summary judgment, which are now before the Court. This matter is ripe for review.

## II.  DISCUSSION

The Freedom of Information Act promotes government transparency by providing a "statutory right of public access to documents and records held by federal agencies." *Citizens for Responsibility & Ethics in Wash. (CREW) v. United States DOJ*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (citation and internal quotation marks omitted); *see also NLRB v. Robbins Tire & Rubber*

*Co.*, 437 U.S. 214, 242 (1978) (explaining that FOIA's fundamental purpose is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). Under the statute, "an agency must disclose all records requested by 'any person,' 5 U.S.C. § 552(a)(3), unless the information sought falls within one of the nine enumerated exemptions listed in section 552(b)." *Vaughn v. United States*, 936 F.2d 862, 865 (6th Cir. 1991). Federal courts have jurisdiction to review *de novo* an agency's withholding of records and to "order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B).

Because most FOIA challenges involve purely legal questions, district courts typically resolve these cases on summary judgment. *ACLU of Mich. v. FBI*, 734 F.3d 460, 465 (6th Cir. 2013). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An agency is entitled to summary judgment in a FOIA action if no material facts are genuinely disputed and the agency shows "that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017).

In their cross motions for summary judgment, the parties dispute the adequacy of TVA's search for responsive records and the agency's use of Exemption 4. In addition, Defendants move for summary judgment on TVA's use of Exemption 6, an issue that has not been opposed by SELC.[1]

---

[1] To the extent the Complaint sought relief based on TVA's failure to make a timely determination, that claim was rendered moot when TVA issued its March 13, 2024, response. *See Roseberry-Andrews v. U.S. Dep't of Homeland Sec.*, 299 F.Supp.3d 9, 20 (D.D.C. 2018) (explaining that an agency's failure to comply with statutory deadlines is not an independent basis for a claim under FOIA).

A.  **Adequacy of Search**

An agency's search for documents in response to a FOIA request is held to a reasonableness standard. *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). To obtain summary judgment, the agency must show that it made a "good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information." *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011). To satisfy this burden, "the agency may rely on affidavits or declarations providing reasonable detail of the scope of the search." *Id.* (cleaned up). Agency affidavits are afforded a presumption of good faith, and "[i]n the absence of countervailing evidence or apparent inconsistency of proof," are sufficient to demonstrate that a search was reasonable. *Id.*

Here, TVA provides the declarations of its FOIA Officer, Julia Denise Smith, and Director of Fuel Operations, Paul Smith. [J. Smith Decl., Doc. 42-1; P. Smith Decl., Doc. 42-5]. In her declaration, Ms. Smith attests to her role in processing the FOIA response, which included asking Paul Smith to search for responsive records, following up with him about that search on March 13, 2024, and requesting a supplemental search in January 2025. [J. Smith Decl. ¶¶ 7, 9, 12, 17].

In his declaration, Paul Smith attests that at all times relevant to the search, he served as TVA's primary point of contact with Tennessee Gas regarding the proposed Cheatham County project. [P. Smith Decl. ¶ 3]. In July 2023, after Ms. Smith informed him about SELC's FOIA request, he conducted a preliminary search of his emails. [*Id.* ¶¶ 4–5]. On or about March 13, 2024, prompted by Ms. Smith, he searched his email records for communications with the two Tennessee Gas personnel who served as his primary points of contact on the Cheatham County project. [*Id.*]. He then provided those records to Ms. Smith. [*Id.*]. In January 2025, he learned that SELC had alleged certain records were missing from the March 2024 FOIA response. [*Id.* ¶ 7]. Mr. Smith

5

then conducted a supplemental search to find any records that might have been overlooked in the initial search. [*Id.* ¶ 7]. For this supplemental effort, two members of Smith's team also searched their email records. [*Id.* ¶ 8]. And the parameters of the search were expanded to include additional search terms related to Cheatham County and Ashland City, as well as additional contacts at Tennessee Gas. [*Id.*]. Mr. Smith and his team located approximately 100 responsive records that were not uncovered in the first search and provided them to Ms. Smith. [*Id.* ¶ 8].

Mr. Smith further attests that certain kinds of records did not exist during the time period covered by the search, given that the project was still in a preliminary phase. [*Id.* ¶ 9, 12]. He explains that as of March 2024, when the lawsuit was filed, the only executed agreement between TVA and Tennessee Gas was the Reimbursement Agreement, and no work had been done that would have required an invoice or payment under that agreement. [*Id.* ¶¶ 13, 16]. While there were some negotiations about a precedent agreement in Fall 2023, the parties did not seriously negotiate the terms of a precedent agreement until April 2024. [*Id.* ¶ 15].

Relying on these declarations, TVA asserts that its search for records was reasonably calculated to uncover responsive records. [TVA Memo, Doc. 44 at 10]. However, Plaintiff contends that TVA's search was inadequate, citing three reasons: (1) TVA "cut short" the temporal scope of the supplemental search; (2) TVA's supporting declarations fail to describe the agency's search methods in sufficient detail; and (3) certain documents that SELC has reason to believe exist have not been accounted for. [SELC Resp., Doc. 53 at 4].

### 1. Reasonableness of the Search Cut-Off Date

First, SELC asserts that TVA applied an unreasonable cut-off date to the supplemental search without notifying SELC. [*Id.* at 6]. 4–6, 5 n. 2]. The supplemental search which TVA conducted in January 2025, was, SELC argues, a "fresh search." [*Id.* at 5]. And therefore, TVA

6

should have searched for records that were generated up to the date the "fresh search" was conducted. [*Id.* at 6]. However, when SELC reviewed TVA's declarations, it learned, for the first time, that the supplemental search had been limited by a cut-off date, apparently in March 2024, at the time of the initial search. [*Id.* at 5–6, 5 n. 2]. According to SELC, this cut-off violated the plain language of the FOIA request, which sought records "through the date of the search" and rendered the search patently unreasonable, since SELC was not notified about the cut-off date in TVA's FOIA response letters. [*Id.* at 5–6].

TVA acknowledges that it used March 13, 2024— the date of the initial search—as the cut-off date for the supplemental search.[2] [TVA Reply, Doc. 57 at 3]. The agency maintains that this date was reasonable because applying a later cut-off date could result in endless litigation. [*Id.* at 4]. Further, TVA contends that SELC had adequate notice of the cut-off based on the agency's FOIA regulation. [*Id.* at 3–4].

FOIA does not instruct agencies on how to determine the cut-off date for responsive records. But whatever date is used, it must be reasonable. *McGehee v. CIA*, 225 U.S. App. D.C. 205, 697 F.2d 1095, 1105 (D.C. Cir. 1983). Here, TVA used the date of its initial search as the cut-off. Courts have consistently found that "a date-of-search cut-off date is reasonable, even if subsequent searches are conducted, to avoid 'an endless cycle of judicially mandated reprocessing.'" *McClanahan v. United States DOJ*, 204 F. Supp. 3d 30, 47 (D.D.C. 2016) (citing *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991); *Sarras v. United States DOJ*, No. 19-cv-0861 (CRC), 2023 U.S. Dist. LEXIS 173166, at *13–14 (D.D.C. Sep. 27, 2023) ("[E]ven though OEO used the date of its *original* search as the cut-off date for the supplemental searches, rather than the dates of the *supplemental* searches, this does not foreclose

---

[2] Although Paul Smith conducted preliminary searches in 2023, TVA views March 13, 2024, as the date of the initial search, since that was when Paul Smith first searched "in earnest." [TVA Reply at 3].

7

the adequacy of OEO's search") (emphasis in original). And the Court sees no reason why a date-of-search cut-off would be unreasonable here.

While SELC attempts to frame the supplemental search as a "fresh search," triggering a new cut-off date, the record does not support that characterization. As reflected in the supplemental response letter and TVA's declarations, the purpose of the January 2025 search was to find any records overlooked in the initial search. To achieve that goal, it was reasonable for TVA to essentially perform the same search again, using the same time frame, but with additional custodians and search terms. *See Watkins Law & Advocacy, PLLC v. United States*, 78 F.4th 436, 450 (2023) ("The object of the supplemental search was to expand the search terms beyond those used in the initial search, and conducting the same search again (including with the same date parameters), except with the new search terms, is . . . a reasonable way to effectuate that purpose.").

SELC is correct that TVA did not provide explicit notice of the cut-off in its response letters. But SELC had constructive notice based on TVA's FOIA regulation. According to the regulation, when the agency responds to a FOIA request, it will only provide records that are "in its possession as of the date that it begins its search," unless the agency notifies the requester that a different date is being used. 18 C.F.R. § 1301.4(a). Here, TVA did not notify SELC that it was deviating from its usual practice. And the agency's use of the March 13, 2024, cut-off—the date that the initial search took place—is consistent with this regulation.

Even if notice had been lacking, SELC fails to explain how it was prejudiced. Notice that a search has been limited by a cut-off date matters "so that the requester may submit subsequent requests for records outside the scope of the initial request." *Dayton Newspaper, Inc. v. VA*, 510 F. Supp. 2d 441, 449 (S.D. Ohio 2007); *see e.g. Judicial Watch, Inc. v. United States DOE*, 310 F. Supp. 2d 271, 305 (D.D.C. 2004) (finding it unreasonable for the agency to use a cut-off date for

responsive records that predated the FOIA request by a year without notifying the requester, because the requester was prevented from making supplementary demands for information). Here, SELC does not allege that it was prevented from filing additional requests for information due to lack of notice regarding the cut-off.[3] Indeed, there is no indication that SELC even knew TVA was going to perform a supplemental search prior to receiving the supplemental response. And only a few weeks passed between March 19, 2025, when the supplemental response was issued, and April 2, 2025, when TVA submitted its declarations, alerting SELC to the cut-off.

Given the foregoing, the Court does not find that the cut-off date was unreasonable or that the search was rendered inadequate due to the alleged lack of notice.

### 2. Insufficient Detail Regarding Search Methods

Next, SELC contends that TVA's declarations fail to establish with sufficient detail that the agency's search was reasonably calculated to uncover all relevant documents. [SELC Resp. at 8]. "An agency's affidavits need not be precise but they must provide basic information on what records were searched, by whom, and in what manner." *Schrecker v. United States DOJ*, 217 F. Supp. 2d 29, 33 (D.D.C. 2002). Here, TVA's declarations explain who conducted the search (Paul Smith, who was in charge of the Cheatham County project and two members of his team, who served as additional custodians in the supplemental search); which records were searched (email communications with Tennessee Gas regarding the Cheatham County project, up through March 2023); and the search method (searching email records for communications with the Tennessee Gas employees who were working on the Cheatham County project, using "Cheatham County"

---

[3] The record reflects that SELC did, in fact, submit a supplemental FOIA request on July 25, 2024. [Supp. FOIA Request, Doc. 57-1]. The request sought records of any precedent agreements between TVA and Tennessee Gas regarding the Cheatham County project. [*Id.*]. TVA issued a determination letter responding to that request on September 30, 2024. [Determination Letter Supp. FOIA Request, Doc. 57-2].

and "Ashland City" as keywords). These details are sufficient to show that TVA's search was reasonably calculated to uncover responsive records.

### 3. Missing Records

Finally, SELC contends that the search was inadequate because the records disclosed by TVA indicate the existence of other responsive records that the agency has not produced or accounted for. [SELC Resp. at 6]. When considering the reasonableness of an agency's search, courts focus on the methods the agency used, not whether the search "actually uncovered every document extant." *CareToLive*, 631 F.3d at 338. Accordingly, an "agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. C.I.A.*, 355 F.3d 675, 678 (D.C. Cir. 2004).

SELC alleges that based on the disclosed records, the following documents likely exist: (1) subsequent reimbursement agreements and invoices or payments pursuant to reimbursement agreements; (2) notes from biweekly calls between TVA and Tennessee Gas; (3) "missing" replies to disclosed emails; (4) presentation materials; (5) term sheets; (6) information about "anticipated or modeled demand for the units" and (7) a preliminary Cheatham County scope of work. [SELC Memo, Doc. 41, at 10]. SELC also points to specific email attachments that are referenced in the disclosed emails but have not been provided. [*Id.* at 10–11]. In response, TVA maintains that the allegedly missing documents either do not exist or were properly withheld under Exemption 4. [TVA Resp., Doc. 52 at 4].

SELC's allegations regarding missing records do not undermine the reasonableness of the search. Most of the allegedly missing records have been accounted for by TVA in its response. As explained in Paul Smith's declaration, subsequent reimbursement agreements and invoices do not

10

exist for the time period covered by the search. And in its brief, TVA acknowledges that the email attachments, presentation materials, and term sheets were intentionally withheld. A few of the records that SELC believes exist have not been specifically addressed by TVA. However, their existence is somewhat speculative, and TVA's failure to produce them does not render the search inadequate.

In sum, the Court finds that TVA made a "good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information." *CareToLive*, 631 F.3d at 340. Hence, Defendants are entitled to summary judgment as to the adequacy of the FOIA search.

### B. Exemptions

Having found TVA's search for records to be adequate, the Court turns to the issue of exemptions. Although an agency must generally produce records responsive to a FOIA request, "Congress recognized that disclosure of certain classes of documents could harm legitimate government interests." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1225–26 (10th Cir. 2007). FOIA contains nine specific exemptions allowing agencies to withhold otherwise responsive documents. *Id.* at 1226 (citing 5 U.S.C. § 552(b)). Because "FOIA is to be broadly construed in favor of disclosure," "exemptions are to be narrowly circumscribed." *Id.* And the federal agency bears the burden of justifying the withholding of records. 5 U.S.C. § 552(a)(4)(b).

To satisfy this burden, agencies typically produce a *Vaughn* Index, which is "a document-by-document index, specially prepared for litigation purposes, in which the agency describes the contents of its records and the reasons why each of the disputed items is claimed to be exempt from disclosure." *Dickerson v. Dep't of Justice*, 992 F.2d 1426, 1429 n.2 (6th Cir. 1993). The purpose of a *Vaughn* Index and any accompanying affidavits is to "afford the FOIA

requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (citation omitted).

While a *Vaughn* Index should be obtained in "most" FOIA cases, *Osborn v. Internal Revenue Service*, 754 F.2d 195, 197 (6th Cir. 1985), there is "no hard and fast rule" regarding when a *Vaughn* index is required. *Dickerson*, 992 F.2d at 1431. As the Sixth Circuit has explained:

> The government must provide evidence that enables the court to make a reasoned, independent assessment of the claim of exemption. Whether that evidence comes in the form of an *in camera* review of the actual documents, something labeled a "*Vaughn* Index," a detailed affidavit, or oral testimony cannot be decisive. The ultimate goals remain to (1) assure that a party's right to information is not submerged beneath government obfuscation and mischaracterization, and (2) permit the court system effectively and efficiently to evaluate the factual nature of disputed information.

*Vaughn*, 936 at 867 (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (1973)) (cleaned up). In other words, it is the substance, not the form, of the government's evidence that counts. *Id.*

### 1. Exemption 4

TVA has withheld and redacted a number of documents under FOIA Exemption 4. As relevant here, Exemption 4 permits an agency to withhold "commercial or financial information obtained from a person" that is "privileged or confidential." 5 U.S.C. § 552(b)(4). In addition to these requirements, the agency must show that disclosure would harm an interest protected by the exemption. *Id.* § 552(a)(8)(A)(i)(I). And the agency bears the burden to show that it took "reasonable steps to segregate and release nonexempt information." *Id.* § 552(a)(8)(A)(ii).

To justify its use of Exemption 4, TVA primarily relies on the declaration of Kinder Morgan's Vice President of Business Development, H. Preston Troutman. Troutman attests that he reviewed the documents identified in TVA's initial and supplemental search and requested that certain commercial and financial information be withheld under Exemption 4. [Troutman Decl.,

12

Doc. 45-1 ¶¶ 9, 12]. Troutman attests that the withheld information may be separated into five categories: "(1) drafts of certain commercial agreements; (2) terms in final commercial agreements relating to costs and limits on liability; (3) email communications discussing revisions to certain draft commercial agreements; (4) preliminary project information; and (5) discussions of non-public Tennessee Gas projects or potential projects other than the Project that are not located in Cheatham County, Tennessee." [*Id.* ¶ 18]. Troutman provides explanations of each of these categories and general reasons why Tennessee Gas believes the information is confidential and would cause competitive harm if disclosed. [*Id.*].

SELC maintains that without a *Vaughn* Index, TVA cannot sustain its burden to show that Exemption 4 was properly applied. [SELC Resp. at 11]. The agency's categorical approach is insufficient, SELC contends, because the category descriptions are overbroad and disconnected from the specifics of individual records. [SELC Reply, Doc. 58 at 5]. In particular, SELC faults the "preliminary project information" category as overly broad, since theoretically, any of the responsive records could fit in that category. [*Id.* at 4–5]. SELC also maintains that without an itemized index, SELC and the Court lack sufficient information to determine whether TVA has fulfilled its duty to segregate nonexempt records. [SELC Resp. at 18].

Defendants maintain that no Vaughn Index is necessary because TVA's justification for invoking Exemption 4 can be easily understood and/or inferred based on Troutman's declaration and context clues in the redacted emails. [TVA Resp. at 9; Tenn. Gas Resp., Doc. 56 at 7–8]. They note that SELC has submitted some of those redacted emails as an exhibit. [*See* Doc. 21, Ex. 1; Doc. 41-1, Ex. 4].

The Sixth Circuit has held that an agency may justify its withholding of information "category-of-document by category-of-document," rather than "document-by-document."

*Vaughn*, 936 F.2d at 867–68 (approving of FBI's categorical approach, where the agency provided a detailed affidavit, defining seven categories of documents and discussing the legal justification for exempting each category from disclosure, along with an exhibit assigning each of 1,000+ pages of withheld records to the appropriate category). However, "if the government chooses to rely on categorical determinations, its definitions of relevant categories must be sufficiently distinct to allow a court to determine, as to each category, whether the specific claimed exemption(s) are properly applied." *Id.* at 868. The agency must also explain its legal justification for claiming the exemption for each category and assign each document to the proper category. *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, Civil Action No. 23-262 (JEB), 2024 U.S. Dist. LEXIS 147111, at *33 (D.D.C. Aug. 19, 2024) (citing *Bevis v. Dep't of State*, 801 F.2d 1386, 1389–90 (1986)).

Defendants' categorical approach is deficient, for at least two reasons. First, TVA has not assigned each document to the appropriate category. This is especially problematic with respect to the 37 documents withheld in full, which have not been clearly identified.[4]

Second, the Court agrees with SELC that Category 4 is not clearly defined. According to Troutman, Category 4 consists of "portions of email communications and email attachments containing preliminary Project information, such as proposed Project routes, rates, design, schedules, and similar non-public Project information []." [Troutman Decl. ¶ 22]. The catch-all,

---

[4] The Court notes that in its response to Plaintiff's motion, TVA inserted a table, listing the email attachments identified by SELC as missing [*see* SELC Resp. at 6–7], along with reasons those records were withheld in full under Exemption 4. [TVA Resp. at 4–6]. The Court will not consider those reasons here because TVA has not submitted this information in a declaration or other competent summary judgment evidence. *See Greenberg v. Hill*, No. 2:07-CV-1076, 2009 U.S. Dist. LEXIS 28027, at *12 (S.D. Ohio Mar. 31, 2009) ("It is well-settled that a court may consider only admissible evidence in ruling on a motion for summary judgment."). And even if the Court could consider the contents of the table as evidence, it does not provide a complete accounting of the 37 documents withheld in full.

14

"similar non-public Project information," seems overly broad, especially since, as SELC points out, TVA has asserted that *all* of the withheld information involved "preliminary planning." It also seems there might be some overlap between Category 4 and Category 3, which both involve email communications wherein TVA and Tennessee Gas discuss confidential terms of the Project. [*See id.* ¶ 21].

In light of these deficiencies, the Court cannot adequately determine whether TVA has properly applied Exemption 4 or whether it has fulfilled its duty to segregate non-exempt information. Although the Court could order the government to amend its categorical approach, the Court believes that a *Vaughn* Index will best enable the Court to "effectively and efficiently . . . evaluate the factual nature of [the] disputed information." *Vaughn*, 936 F.2d at 867. Accordingly, the Court will grant SELC's request for a *Vaughn* Index, and Defendants' motion for summary judgment as to the agency's use of Exemption 4 will be denied.[5]

### 2. Exemption 6

In addition to its use of Exemption 4, TVA also withheld information pursuant to FOIA Exemption 6. Under Exemption 6, agencies are not required to disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). TVA invokes Exemption 6 to justify redacting the personal cell phone numbers and email addresses of its employees and employees of Tennessee Gas. [J. Smith Decl. ¶ 15; Troutman Decl. ¶¶ 26–29]. Defendants argue that disclosing this information

---

[5] SELC also argues that TVA has not borne its burden of showing that the withheld information was "obtained from a person," as required under Exemption 4, or that disclosure of that information would cause foreseeable harm. [SELC Memo TVA Memo at 15; SELC Resp. at 12–14]. The Court defers consideration of those issues until after TVA has produced the *Vaughn* Index.

would be an unwarranted invasion of privacy. [TVA Memo at 19–20; Tenn. Gas Memo, Doc. 46 at 20].

SELC has not opposed TVA's use of Exemption 6 in any of its summary judgment filings. Therefore, it has conceded the issue. *See Degolia v. Kenton Cnty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019) (citation omitted) ("[I]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). And Defendants' motions for summary judgment will be granted as to Exemption 6.

### III. CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment [Doc. 40] is **GRANTED in PART** and **DENIED in PART**. The motion is **GRANTED** to the extent Plaintiff requests that the Court order Defendants to produce a *Vaughn* Index, justifying their use of Exemption 4. The motion is **DENIED** to the extent that Plaintiff asks the Court to order TVA to conduct an additional search for responsive records.

Defendants' motions for summary judgment [Docs. 42, 45] are likewise **GRANTED in PART** and **DENIED in PART**. Their motions are **GRANTED** as to the adequacy of TVA's search for responsive records and TVA's application of Exemption 6. Defendants' motions are **DENIED without prejudice** as to TVA's use of Exemption 4. TVA is **ORDERED** to produce a *Vaughn* Index, or comparable document-by-document review of the records withheld or redacted under Exemption 4, within forty-five (45) days of the entry of this Order.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE